United States District Court
Southern District of Texas
**ENTERED**
September 19, 2023
Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DWAYNE RIVENS-BAKER, JR., (TDCJ #02064290), | § § § | |
| *Plaintiff*, | § § | |
| vs. | § § | CIVIL ACTION NO. H-22-2462 |
| J. RILEY, *et al.* | § § § | |
| *Defendants.* | § § § | |

### MEMORANDUM OPINION AND ORDER

Dwayne Rivens-Baker, Jr., (TDCJ #02064290), proceeding *pro se* and *in forma pauperis*, filed an amended Prisoner's Civil Rights Complaint under 42 U.S.C. § 1983, alleging that TDCJ officials at the Wayne Scott Unit used excessive force against him and then were deliberately indifferent to his injuries. (Dkt. 11). After screening under 28 U.S.C. § 1915A(b), the Court ordered an answer from defendants Warden Jerry Sanchez, Sergeant Latoya Bradley, Corrections Officer Dayo Fasola, Corrections Officer Emezie Onyeahialam, Corrections Officer Michael Onwusa, and Nurse Bintaben Shah. (Dkt. 30). The defendants filed their answers, (Dkts. 34, 44), and then filed a joint motion for summary judgment with numerous exhibits. (Dkt. 53). Rivens-Baker filed a timely response to the motion, (Dkt. 64), and the defendants filed a reply. (Dkt. 69). Having reviewed the motion,

the response and reply, the summary judgment evidence, all matters of record, and the applicable law, the Court grants the defendants' motion and dismisses Rivens-Baker's action for the reasons explained below.

## I.   **BACKGROUND**

In August 2022, Rivens-Baker filed an amended complaint under § 1983 based on events that occurred on May 13, 2021, when he was incarcerated at TDCJ's Jester IV Unit. (Dkt. 11). In his amended complaint, Rivens-Baker alleges that Latoya Bradley and two unknown detention officers choked and beat him while he was handcuffed and not resisting. (*Id.* at 4). He alleges that Bradley also sprayed a chemical agent on his genital area during the assault. (*Id.*). Rivens-Baker alleges that Nurse Shah failed to document his injuries, refused to treat him, and instead ordered that he be placed in a seclusion cell without any medical treatment. (*Id.*). Rivens-Baker alleges that Warden Sanchez failed to train his staff to comply with TDCJ's policies and, despite knowing of the incident, failed to investigate and properly report it. (*Id.*). Rivens-Baker seeks a declaration that each of the defendants violated his rights under the Eighth Amendment, an award of money damages. (*Id.*).

Rivens-Baker provided additional facts in a supplement to his amended complaint. (Dkt. 12). There, he alleges that on May 13, he was being escorted to a

cell after a shower when he asked to speak with a PREA officer about an earlier event. (*Id.* at 3). The officers escorting Rivens-Baker refused to allow him to speak with a PREA officer at that time, so he "took a knee" and asked to speak with a higher-ranking officer. (*Id.*). Bradley, as the sergeant on the floor, responded to the scene, but she also refused to contact the PREA officer at that time. (*Id.*). The officers then started "to forcefully drag" Rivens-Baker toward his cell. (*Id.*). Rivens-Baker denies that he made any threatening gestures or actions toward the officers. (*Id.*).

According to Rivens-Baker, as the officers dragged him toward his cell, they shoved him to the floor, where he hit his head. (*Id.* at 4). While Rivens-Baker was on the floor, Bradley choked him while the other officers hit his feet and ankles. (*Id.*). Bradley then tore off Rivens-Baker's gown, leaving him naked on the floor, and sprayed a chemical agent directly on his genitals, as well as on his ear and face. (*Id.*). The officers then took Rivens-Baker to a seclusion cell. (*Id.* at 4-5). Later investigation determined that the detention officers involved in the incident in addition to Bradley were Fasola, Onyeahialam, and Onwusa. (Dkts. 24, 25).

Once Rivens-Baker was inside the seclusion cell, Nurse Shah arrived and spoke with him through a window in the cell door, but she refused to examine him or treat him. (Dkt. 12, p. 5). Rivens-Baker alleges that he was in extreme pain from

the chemical agent, but he was not offered any medical care.  (*Id.*).  Instead, he was left in the seclusion cell, where he was denied medical care, denied the right to go to the bathroom, and denied food for more than 24 hours.  (*Id.*).  Rivens-Baker alleges that Warden Sanchez knew of these events, but he did nothing to investigate what had occurred, nor did he make proper reports of what happened.  (*Id.*).

Rivens-Baker alleges that Bradley and the other detention officers used excessive force against him and that Bradley sexually assaulted him with the chemical agent.  (*Id.* at 6).  He alleges that Nurse Shah displayed deliberate indifference by refusing to examine him and treat him after the excessive force occurred.  (*Id.*).  And he alleges that Warden Sanchez displayed deliberate indifference by failing to take disciplinary action against the officers, failing to respond to the sexual assault claim, and failing to investigate the excessive force complaint.  (*Id.*).  He also alleges that Warden Sanchez failed to properly train staff and failed to keep inmates safe from assaults by staff.  (*Id.*).

The Court ordered Bradley, Fasola, Onyeahialam, Onwusa, Shah, and Sanchez to answer the complaint.  (Dkt. 30).  The defendants answered the complaint, (Dkts. 34, 44), and then filed a joint motion for summary judgment.  (Dkt. 53).  The motion for summary judgment and summary judgment evidence contradict portions of Rivens-Baker's account of the incident.  (Dkt. 53-3).  The use-of-force

4

report states that as Rivens-Baker was being escorted to his cell after a shower, he became upset and then started making movements and sounds as if he intended to spit on the officers. (*Id.* at 8). The officers took Rivens-Baker to the ground and tried to secure him in leg restraints, but he resisted by kicking at the officers. (*Id.*). When Rivens-Baker continued to kick, Bradley used her chemical agent to subdue him. (*Id.*). Because Rivens-Baker was on the floor and was struggling and kicking, some of the chemical agent got onto his genitals, face, and ears. (*Id.*).

Despite these factual disputes about the incident itself, the defendants assert that they are entitled to summary judgment in their favor on legal grounds. Defendants Bradley, Fasola, Onyeahialam, and Onwusa contend that the claims against them should be dismissed because Rivens-Baker failed to exhaust his administrative remedies before filing this action. (*Id.* at 11-20). Nurse Shah contends that the summary judgment evidence does not show that she was deliberately indifferent to Rivens-Baker's injuries. (*Id.* at 20-27). And Warden Sanchez contends that Rivens-Baker's allegations do not show that he violated Rivens-Baker's constitutional rights. (*Id.* at 27-29). In support of their motion for summary judgment, the defendants filed the relevant portions of Rivens-Baker's medical records; the relevant portions of his seclusion and mental health records; the use-of-force report; the relevant portions of his grievance records; the relevant

5

portions of his disciplinary records; the use-of-force video of a portion of the events;

an excerpt from the Correctional Managed Health Care Policy Manual; and an

excerpt from TDCJ's Offender Orientation Handbook relating to grievance

procedures. (Dkts. 53-1, 53-2, 53-3, 53-4, 53-5, 53-6, 53-7, 53-8).

In his response, Rivens-Baker clarifies that he is seeking declaratory relief

against the defendants in their official capacities and monetary relief against them in

their individual capacities. (Dkt. 64, pp. 1-2). He contends that he tried to exhaust

his administrative remedies but that the TDCJ grievance system is

"faulty/irregular/and inconsistent." (*Id.* at 2). He asserts that TDCJ officials did not

return his processed Step 1 grievances to him, so he could not file timely Step 2

grievances. (*Id.* at 2-3). He contends that factual disputes exist concerning whether

he timely filed grievances and whether they were properly processed and that these

disputes should preclude summary judgment on this basis. (*Id.* at 3). Finally, he

disputes the defendants' characterization of the facts relating to his claims against

Nurse Shah and Warden Sanchez. (*Id.* at 4-7). Rivens-Baker attached his unsworn

declaration to his response, alleging that TDCJ officials failed to follow their own

grievance processing procedures, which interfered with his ability to exhaust his

administrative remedies. (Dkt. 64-1, p. 1-2). He also alleges that, contrary to the

defendants' assertions, Nurse Shah had the authority to enter the seclusion order that

6

kept him confined in the seclusion cell without medical treatment. (*Id.* at 3).

In reply, the defendants assert that any possible claim Rivens-Baker might have for prospective injunctive relief has been rendered moot by his transfer to a different TDCJ unit. (Dkt. 69, p. 2). They assert that Rivens-Baker's allegations regarding the grievance processing, which are unsupported by evidence, are insufficient to avoid summary judgment. (*Id.* at 3-5). They also assert that Rivens-Baker's unsupported and conclusory allegations about the facts of the May 13 incident are insufficient to avoid summary judgment. (*Id.* at 5-14).

## II.   **APPLICABLE LAW**

### A.   **Actions Under 42 U.S.C. § 1983**

Rivens-Baker brings his complaint against the defendants under 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Gomez v Galman*, 18 F.4th 769, 775 (5th Cir. 2021)

7

(per curiam).  The dispute in this case focuses on the first element:  whether the defendants violated Rivens-Baker's constitutional rights.

### B.   Summary-Judgment Standard

The defendants responded to Rivens-Baker's amended complaint with a motion for summary judgment.  "Summary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton,* 572 U.S. 650, 656-57 (2014) (per curiam) (quoting FED. R. CIV. P. 56(a)).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25 (1986)).  "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston,* 964 F.3d 374, 379 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.,* 627 F.3d 134, 134 (5th Cir. 2010)).  "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna,* 903 F.3d 534, 546 (5th Cir. 2018) (cleaned up).

When considering a motion for summary judgment, the Court must view all evidence and draw all inferences "in the light most favorable to the [nonmoving] party." *Tolan,* 572 U.S. at 657 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144,

8

157 (1970)); *see also Dyer*, 964 F.3d at 380.  However, if record evidence clearly

contradicts the plaintiff's version of events, the Court "should not adopt that version

of the facts for purposes of ruling on a motion for summary judgment." *Waddleton*

*v. Rodriguez*, 750 F. App'x 248, 253-54 (5th Cir. 2018) (per curiam) (quoting *Scott*

*v. Harris*, 550 U.S. 372, 380 (2007)).  This is particularly true when there is video

evidence.  When video evidence exists, the Court will "view[] the facts in the light

depicted by the videotape." *Salazar v. Molina*, 37 F.4th 278, 280 (5th Cir. 2022)

(quoting *Scott*, 550 U.S. at 381); *see also Betts v. Brennan*, 22 F.4th 577, 582 (5th

Cir. 2022) ("[W]e assign greater weight, even at the summary judgment stage, to the

video recording taken at the scene.") (cleaned up); *Carnaby v. City of Houston*, 636

F.3d 183, 187 (5th Cir. 2011) ("A court . . . need not rely on the plaintiff's description

of the facts where the record discredits that description but should instead consider

the facts in the light depicted by the videotape.") (cleaned up).

When both parties have submitted evidence that tends to show conflicting

facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences

are to be drawn in his favor." *Willis v. Roche Biomedical Labs., Inc.,* 61 F.3d 313,

315 (5th Cir. 1995).  However, the Court will not consider the nonmoving party's

conclusory allegations and unsubstantiated assertions as evidence. *See Little v.*

*Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  After viewing the

9

offered evidence in the light most favorable to the nonmoving party, summary

judgment may be granted only if no genuine disputes of fact exist and no reasonable

jury could return a verdict for the nonmoving party. *See, e.g., Rubinstein v. Adm'rs*

*of the Tulane Educ. Fund,* 218 F.3d 392, 399 (5th Cir. 2000).

### C.   *Pro Se* Pleadings

Because Rivens-Baker is proceeding *pro se*, the Court construes his filings

liberally, subjecting them to "less stringent standards than formal pleadings drafted

by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  But even

under this lenient standard, *pro se* litigants must still "abide by the rules that govern

the federal courts." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014)

(quoting *Frazier v. Wells Fargo Bank, N.A.*, 541 F. App'x 419, 421 (5th Cir. 2013)).

"*Pro se* litigants must properly plead sufficient facts that, when liberally construed,

state a plausible claim to relief, serve defendants, obey discovery orders, present

summary judgment evidence, file a notice of appeal, and brief arguments on appeal."

*Id.* (footnotes omitted).

### III.   DISCUSSION

#### A.   Official Capacity Claims

In the supplement to his amended complaint, Rivens-Baker asserts that he

seeks relief from the defendants in both their official and individual capacities. (Dkt.

12, p. 3). After the defendants filed their motion for summary judgment, Rivens-Baker clarified that he is seeking declaratory or injunctive relief against the defendants only in their official capacities. (Dkt. 64, p. 1-2). Even with this clarification, Rivens-Baker may not proceed with his claims for this relief because it is barred by the Eleventh Amendment.

The Eleventh Amendment bars claims for declaratory or injunctive relief against a State or state actor when those claims concern a state official's past actions rather than an ongoing violation of federal law. *See Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Ex parte Young*, 209 U.S. 123 (1908)). To determine whether the plaintiff's claims are barred by the Eleventh Amendment, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). If the plaintiff seeks only retroactive relief, Eleventh Amendment immunity bars the claim. *See Green,* 474 U.S. at 71.

In this case, Rivens-Baker does not seek declaratory relief relating to an ongoing violation of federal law; instead, he seeks a declaration that the defendants' past actions violated his constitutional rights. Because this relief is not available against the defendants in their official capacities, Rivens-Baker's claims for

11

injunctive relief against the defendants in their official capacities are barred by the Eleventh Amendment. Rivens-Baker's claims for declaratory and injunctive relief against the defendants in their official capacities are dismissed with prejudice.

### B.    Individual Capacity Claims

To the extent that Rivens-Baker sues the defendants in their individual capacities for money damages, his claims are not barred by the Eleventh Amendment. Therefore, the Court will address those claims in more detail below.

### 1.    Claims Against Bradley, Fasola, Onyeahialam, and Onwusa

Defendants Bradley, Fasola, Onyeahialam, and Onwusa contend that Rivens-Baker's claims against them should be dismissed because he failed to exhaust his administrative remedies before filing this action. (Docket Entry No. 53, pp. 11-20). The summary judgment evidence supports this assertion.

The Prison Litigation Reform Act bars an inmate's § 1983 action concerning "prison conditions" until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has broadly interpreted the phrase "prison conditions" to include all types of constitutional claims, including allegations of the use of excessive force. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they

12

involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Exhaustion of administrative remedies is mandatory, regardless of the forms of relief sought or offered through administrative avenues. *See Porter,* 534 U.S. at 524. In addition, courts require "*proper* exhaustion of administrative remedies." *See Woodford*, 548 U.S. at 83-84 (emphasis added). A prisoner does not properly exhaust the grievance process "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* And unlike some circuits, the Fifth Circuit takes "a strict approach" to the exhaustion requirement. *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008) (per curiam). Therefore, if a prisoner fails to properly exhaust the available administrative remedies, "a court may not excuse a failure to exhaust" regardless of the circumstances. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Instead, if an inmate does not properly exhaust his administrative remedies before filing suit, his claims must be dismissed. *See Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

Texas prisons have a two-step grievance process that applies to all prisoner grievances. Inmates must first file a Step 1 grievance, which "must be filed within fifteen days of the complained-of incident, [and which] is handled within the prisoner's facility." *Id.* The facility has forty days in which to respond to most grievances, and forty-five days in which to respond to a medical grievance. (Dkt.

13

53-8, p. 3). If the prisoner is unhappy with the response to a Step 1 grievance, he may appeal that decision by filing a Step 2 grievance within fifteen days from the date the processed grievance is returned to the prisoner. (*Id.*). The State has forty days in which to respond to most Step 2 grievances, and forty-five days in which to respond to medical grievances. (*Id.*). A prisoner must pursue a grievance through both steps of the grievance process before that process will be considered exhausted. *Johnson*, 385 F.3d at 515; *see also Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

In this case, the defendants have filed Rivens-Baker's grievance records from February 1, 2021, through November 30, 2021, in support of their motion for summary judgment. (Dkt. 53-4). These records show that Rivens-Baker filed multiple grievances during that period, including both Step 1 grievances and Step 2 appeals and four grievances relating to events similar to those described in Rivens-Baker's current complaint. (*Id.* at 3-31).

Rivens-Baker filed Step 1 grievance # 2021096721 on April 15, 2021, alleging that officials at the Connally Unit used excessive force against him on April 5, 2021, and then were deliberately indifferent to his resulting injuries. (*Id.* at 3-4). The grievance does not identify any of the defendants, and the events occurred more than a month before the events at issue in this action at a different TDCJ unit from

14

where these defendants are located.

Rivens-Baker filed Step 1 grievance #2021114563 on May 26, 2021, alleging that he was subjected to excessive force and the use of chemical agents by defendant Bradley at the Jester 4 Unit on April 11, 2021.[1] (*Id.* at 23-24). This grievance does not identify any other defendant as being involved in the incident. (*Id.*). This grievance was dismissed as a duplicate of grievance # 2021096721, which appears to be an error. (*Id.* at 24). However, Rivens-Baker did not file a Step 2 grievance to appeal the dismissal of the Step 1 grievance.

Rivens-Baker filed Step 1 grievance #202113975 on May 25, 2021, alleging an excessive use of force by defendant Bradley on an unidentified date. (*Id.* at 29). Despite not receiving a response to this grievance, Rivens-Baker did not file a Step 2 grievance appeal relating to this grievance.

Finally, Rivens-Baker filed Step 1 grievance # 2022001161 on September 3, 2021, complaining about the disciplinary sanctions he received as a result of the May 13 incident. (*Id.* at 25). This grievance was returned unprocessed because it was filed after the time to file a grievance had expired. (*Id.*). Rivens-Baker did not file a Step 2 grievance appeal from that adverse decision.

These records tend to show that Rivens-Baker did not exhaust his

---

[1]Rivens-Baker's medical records appear to indicate that he was at the Connally Unit rather than the Jester IV Unit in April 2021. (Dkt. 53-1, pp. 34-38).

administrative remedies as to his claims against the defendants before he filed this

action. He did not file a grievance against Fasola, Onyeahialam, or Onwusa at any

time for their conduct on May 13. And even assuming that his grievances identifying

Bradley relate to the events of May 13, rather than April 5 or April 11, Rivens-Baker

did not exhaust the grievance process as to these claims because he did not file Step

2 grievance appeals of the decisions on those Step 1 grievances. By failing to pursue

his grievances through the entire two-step grievance process, Rivens-Baker failed to

exhaust his administrative remedies and is not entitled to proceed with this action.

In his response to the defendants' motion, Rivens-Baker points to the original

complaint filed in this action, to which he attached copies of the Step 1 and Step 2

grievances relating to grievance # 2021097711. (Dkts. 64, p. 2; 1-1, pp. 5-8). These

attachments show that Step 1 grievance # 2021097711 was filed on April 19, 2021,

and described events that occurred on either April 5 or 11, 2021, at TDCJ's Connelly

Unit. (Dkts. 1-1, pp. 5-8; 53-4, pp. 11-14). These Step 1 and Step 2 grievances,

relating to events that occurred on a different date at a different TDCJ Unit from the

events underlying this action, do not establish that Rivens-Baker exhausted his

administrative remedies as to the claims pending in this current action.

Rivens-Baker also contends that TDCJ's failure to comply with its own

policies prevented him from exhausting his administrative remedies. (Dkt. 64, pp.

2-3). He asserts that he never received a response to his Step 1 grievance # 202113975, so he was unable to file a timely Step 2 grievance. (*Id.*). He contends that he filed Step 1 grievance # 2022001161, to try to "exhaust his claims that were never returned back to him." (*Id.*). He alleges that TDCJ officials interfered with his ability to exhaust his remedies by failing to follow their own grievance procedures. (*Id.* at 3). He also points to his unsworn declaration in which he states that he intends to testify that TDCJ officials did not follow the established grievance procedures. (Dkt. 64-1, p. 1).

Even taking Rivens-Baker's allegations as true, these facts do not excuse his failure to exhaust his administrative remedies because a prisoner must continue to pursue his administrative remedies even if TDCJ does not timely respond to a Step 1 grievance. As our sister court has explained:

> Fifth Circuit case precedent states "that the requirement that a prisoner pursues the grievance remedy to conclusion 'does not fall by the wayside in the event that the prison fails to respond to the prisoner's grievance at some preliminary step in the grievance process. Instead, the prison's failure to timely respond simply entitles the prisoner to move on to the next step in the process.'" *Cantwell v. Sterling*, 2016 WL 7971768, *5 (W.D. Tex. May 18, 2016) (citing *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998)). Although Plaintiff's step 1 grievance went unanswered, under the law of this Circuit, Plaintiff was nevertheless required to file a step 2 grievance in the exhaustion process before filing suit. Thus, once the time period expired for TDCJ to file a response, Plaintiff's step 1 grievance was considered exhausted and he was required to file a step 2 grievance. It is undisputed from Plaintiff's sworn affidavit that he did not file a step 2 grievance. As

such, Plaintiff has failed to properly exhaust his administrative remedies. *Cantwell*, 2016 WL 7971768, *5 (W.D. Tex. May 18, 2016) (citing *Underwood*, 151 F.3d 292-295; *Hicks v. Lingle*, 370 F. App'x 497, 499 (5th Cir. 2010); *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015)). To the extent Plaintiff claims he could not file a step 2 grievance without a copy of the completed and answered step 1 grievance, Plaintiff's remedy in that situation was to either request a copy of the completed and answered step 1 from the grievance department if one existed or file another step 1 grievance. Plaintiff, again, concedes he never attempted to file a step 2 or another step 1 grievance.

*Carter v. Boyd*, No. 9:19-CV-163, 2022 WL 3146319, at *4 (E.D. Tex. June 15, 2022), *report and recommendation adopted,* No. 9:19-CV-163, 2022 WL 3141871 (E.D. Tex. Aug. 5, 2022). Because the summary judgment evidence in that case showed that Carter had not exhausted his administrative remedies, summary judgment was granted in favor of the defendants. *Id.*

In this case, as in *Carter*, Rivens-Baker alleges that he could not file a timely Step 2 appeal in grievance # 202113975 because he never received a response to his Step 1 grievance. But, as in *Carter*, the lack of a response simply entitled Rivens-Baker to proceed with the grievance process and file a Step 2 grievance appeal when the forty-day period for responding to the Step 1 grievance had expired. He did not. Instead, on September 3, 2021, he filed a second Step 1 grievance, grievance # 2022001161, concerning the same excessive force incident. This grievance was untimely, whether it was considered a new Step 1 grievance or a Step 2 grievance

18

appeal from grievance # 202113975. Further, when grievance # 2022001161 was rejected as a duplicate, Rivens-Baker did not file a Step 2 grievance appeal from that decision. Because Rivens-Baker never filed a timely Step 2 grievance appeal after TDCJ failed to properly and timely respond to his Step 1 grievance, he failed to properly exhaust his available administrative remedies as to these claims.

Finally, Rivens-Baker asserts in his unsworn declaration that he filed the proper grievances and that TDCJ's records are incomplete. (Dkt. 64-1, pp. 1-2). But Rivens-Baker admits that he did not retain a copy of the grievances he alleges that he filed, and he asserts that he will simply testify to having filed them. (*Id.*). These conclusory and unsupported allegations do not constitute evidence, *see Little*, 37 F.3d at 1075, and they are insufficient to satisfy Rivens-Baker's burden to show that disputed issues of fact exist on the question of whether he properly exhausted his administrative remedies.

The competent summary judgment evidence before the Court shows that Rivens-Baker did not exhaust his administrative remedies as to his claims against Bradley, Fasola, Onyeahialam, and Onwusa before filing this action. Because no genuine dispute of material fact exist as to these claims, these defendants are entitled to summary judgment in their favor. Rivens-Baker's claims against defendants Bradley, Fasola, Onyeahialam, and Onwusa are dismissed with prejudice.

### 2.   **Claims Against Nurse Shah**

Rivens-Baker seeks money damages from Nurse Shah based on his claims that she violated his Eighth Amendment rights by refusing to examine him or provide him with treatment after he was sprayed with a chemical agent and that she falsified records to improperly keep him in the seclusion cell. The competent summary judgment evidence does not support these claims.

### a.   **Deliberate Indifference**

The Eighth Amendment protects prisoners from cruel and unusual punishment arising from a prison official's deliberate indifference toward a prisoner's injuries or pain. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To prevail on a deliberate indifference claim, the prisoner must prove that the prison medical provider acted with "deliberate indifference" to a "serious medical need" in a manner that "constitutes the unnecessary and wanton infliction of pain[.]" *Id.* at 104 (cleaned up); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (emphasizing that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment") (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1988)). "To show an official was deliberately indifferent, a plaintiff must demonstrate that the official is aware that an 'inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Davis v. Lumpkin*, 35 F.4th 958, 963 (5th

20

Cir. 2022) (quoting *Farmer*, 511 U.S. at 847).   But the deliberate indifference standard is "extremely high." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).   "Deliberate indifference is more than mere negligence or even gross negligence." *Brown v. Callahan,* 623 F.3d 249, 255 (5th Cir. 2010).   "Actions and decisions by officials that are merely inept, erroneous, ineffective or negligent" do not amount to deliberate indifference. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998).   Neither do "[u]nsuccessful medical treatment, acts of negligence, . . . medical malpractice" or "a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (cleaned up).   Instead, to obtain relief for a constitutional violation based on deliberate indifference, the prisoner must show that the prison medical provider "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (cleaned up).

In his amended complaint, Rivens-Baker alleges that Nurse Shah was deliberately indifferent to his claims of injury from the excessive force. (Dkt. 11, p. 4). In his supplemental statement, he alleges that he began bleeding from his rectum while in seclusion, but that Nurse Shah denied him medical attention for this condition. (Dkt. 12, p. 5). He further alleges that "during the course of his

21

seclusion," he was denied the right to use the restroom, forced to urinate and defecate on the floor of his cell, denied food, and forced to suffer mental and emotional trauma. (*Id.*). The summary judgment evidence contradicts these claims.

The medical records show that Rivens-Baker was in a seclusion cell as of midnight on May 13. (Dkt. 53-2, p. 15). At 7 a.m., Dr. Emiola ordered Rivens-Baker's release from the seclusion cell. (*Id.* at 7-8). The use-of-force incident occurred as the defendants were taking Rivens-Baker to his new cell after a post-seclusion shower. (*Id.* at 9-11). After the incident, Rivens-Baker was returned to a seclusion cell because he posed a danger to others. (*Id.* at 11). Dr. Emiola entered the order for Rivens-Baker to be returned to a seclusion cell. (*Id.*).

The nursing note signed by Nurse Shah indicates that when she observed Rivens-Baker through the seclusion cell door, he did not appear to be in distress, that he was breathing properly, and that his speech was clear and coherent. (*Id.*). She noted that Rivens-Baker was not visibly injured and that he was moving about the cell normally. (*Id.*). He also verbally denied having any injuries or breathing difficulties. (*Id.* at 13). He was provided with water so that he could wash the chemical agent off of himself. (*Id.* at 11).

These statements in Nurse Shah's nursing notes are supported by the use-of-force video in the record, which show Rivens-Baker moving normally as officers

remove his hand and leg restraints and as he speaks with Nurse Shah through the cell door. (Dkt. 53-6). The video also captures Rivens-Baker complaining that he is feeling burning from the chemical agent, and Nurse Shah telling him to wash the agent off with the water he was provided. (*Id.*). Rivens-Baker complains of no other injuries at that time. (*Id.*).

The medical records show that while Rivens-Baker was in the seclusion cell, the nursing staff made visual checks of him every fifteen minutes and offered him the opportunity to go to the restroom. (Dkt. 53-2, p. 11). Rivens-Baker did not indicate that he was suffering from any injuries during these checks. (*Id.*). In a nursing note from May 13 at 4:19 p.m., Rivens-Baker reported to Nurse Shah, "I alright." (*Id.* at 18). He voiced no complaints of injury or harm. (*Id.*). There are no other nursing notes from Nurse Shah; instead, Rivens-Baker was cared for after that time by other medical staff. At 7:45 p.m., Dr. Moin renewed the order for Rivens-Baker to be in the seclusion cell after Rivens-Baker was seen by Nurse Solly. (*Id.* at 22).

The medical records show that the first time Rivens-Baker voiced any complaint of injuries from the May 13 incident was on May 15. (Dkt. 53-1, p. 11). While standing at the nursing station, he told the nurse that his ears hurt "after they gassed me" and that he was having problems defecating and urinating. (*Id.*). The

nurse checked Rivens-Baker's ears, which had no redness or drainage. (*Id.*). The nurse then advised Rivens-Baker to be sure to wash thoroughly in the shower and that the burning from the chemical agent would gradually wear off. (*Id.*). The next day, Rivens-Baker reported additional genital concerns due to the chemical agent. (*Id.* at 9). He was again told that the effects of the chemical agent would gradually dissipate over the next few days. (*Id.*). Rivens-Baker was transferred to a new unit on May 17. (*Id.* at 8). His nursing assessment at his new unit reported that all physical systems were normal. (*Id.* at 42-44).

This medical evidence contradicts Rivens-Baker's claims of deliberate indifference. There is no record evidence that Nurse Shah was aware that Rivens-Baker faced a "substantial risk of serious harm" or that she "disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Davis*, 35 F.4th at 963. Rivens-Baker specifically denied suffering any injury when Nurse Shah conducted the cell-side assessment; instead, he complained only of burning from the chemical agent. Nurse Shah told Rivens-Baker to use the water he had been provided to wash the chemical agent off his skin to stop its effects. While Rivens-Baker asserts that Nurse Shah should have physically examined him inside of the cell, he cannot show that such an examination was required when he had specifically denied any claims of injury. And even if Nurse Shah's advice to Rivens-Baker concerning the chemical

agent was inadequate, such facts would establish, at most, that her attempt to treat him was ineffective rather than that she was deliberately indifferent to a risk of serious physical harm. Rivens-Baker's disagreement with the nature and extent of the medical treatment he received is insufficient to support a claim for deliberate indifference. *See, e.g., Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (noting that a prisoner's disagreement with his medical treatment does not constitute deliberate indifference).

Rivens-Baker directs the Court's attention to no evidence contradicting the medical records and the video. Having failed to offer evidence sufficient to show that genuine disputes of fact exist concerning whether Nurse Shah was deliberately indifferent to Rivens-Baker's serious medical needs, Rivens-Baker cannot avoid entry of summary judgment in favor of Nurse Shah. His claim against her on this basis is dismissed.

### b.   Falsification of Records

Rivens-Baker also alleges that Nurse Shah falsified records so that he would be kept in a seclusion cell. Even taking these allegations as true, these facts do not allege a constitutional violation and so cannot support a claim under § 1983.

Falsifying prison records, standing alone, does not violate the Constitution. *See, e.g., Henderson v. Buttross,* No. A-17-CV-436-LY, 2017 WL 2391806, at *3

(W.D. Tex. June 2, 2017) (falsification of documents is not a constitutional violation and cannot support a § 1983 claim); *Fountain v. Thaler,* Civil No. 6:13cv958, 2015 WL 5168775, at *11 (E.D. Tex. Sept. 2, 2015) (citing *Hernandez v. Estelle,* 788 F.2d 1154, 1158 (5th Cir. 1986)) (dismissing prisoner's claim that defendants falsified grievances because such action does not violate the Constitution). Therefore, conclusory allegations that medical records have been "falsified" are insufficient to defeat a motion for summary judgment. *See Knighten v. Ott,* 69 F. App'x 657 (5th Cir. 2003) (*citing Michaels v. Avitech, Inc.,* 202 F.3d 746, 754-55 (5th Cir. 2000)). Instead, a prisoner must allege and show how the alleged falsification of records violated his constitutional rights. *See, e.g., Gravely v. Speranza*, 219 F. App'x 213, 215 (3d Cir. 2007).

But Rivens-Baker does not allege facts showing either that keeping him in the seclusion cell for three days violated his constitutional rights or that he was kept there based on the records allegedly falsified by Nurse Shah. First, Rivens-Baker alleges that his three-day stay in a seclusion cell violated the Correctional Managed Care guidelines. But a defendant's failure to follow TDCJ and CMC guidelines and policies, without more, does not constitute a constitutional violation. *See Williams v. Stephens*, 547 F. App'x 599, 600 (5th Cir. 2013) (citing *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986)). Moreover, the courts have held that keeping an

26

inmate in a seclusion or crisis-management cell for three days, standing alone, does not rise to the level of a constitutional violation. *See Davis v. Scott*, 157 F.3d 1003, 1004-05 (5th Cir. 1998). Therefore, even if Rivens-Baker is correct that the defendants violated TDCJ policies by keeping him in the seclusion cell for three days, those facts do not state a claim for a constitutional violation that would support relief under § 1983.

Second, even if circumstances occurred during those three days that resulted in a violation of Rivens-Baker's constitutional rights, he has not shown that the violations were caused by Nurse Shah's actions. Rivens-Baker alleges that during his time in the seclusion cell, he was denied sufficient food, denied sufficient trips to the restroom, and denied further medical care. But even taking these allegations as true, the summary judgment evidence does not show that these violations resulted from Nurse Shah's falsified notes. The summary judgment evidence shows that Nurse Shah saw Rivens-Baker for a final time at 4:19 p.m. on May 13. More than three hours later, his time in the seclusion cell was extended on orders from Dr. Moin, after Rivens-Baker was seen by Nurse Solly. (Dkt. 53-2, p. 22). Any potential constitutional violations Rivens-Baker may have suffered after that order was entered were not the result of any actions taken by Nurse Shah, and she cannot be held liable for harm that resulted from the allegedly unconstitutional actions of

others.

Rivens-Baker has not carried his burden to show that disputed issues of fact exist material to the question of whether Nurse Shah violated his constitutional rights. She is therefore entitled to summary judgment in her favor, and Rivens-Baker's claims against Nurse Shah are dismissed with prejudice.

### 3. Claims Against Warden Sanchez

Rivens-Baker alleges that Warden Sanchez is liable for two reasons: (1) because he knew of the excessive force incident but failed to properly investigate the incident or Rivens-Baker's grievances, and (2) because he failed to properly train his staff. These allegations are not sufficient to withstand the defendants' motion for summary judgment.

#### a. Failure to Investigate

To the extent that Rivens-Baker alleges that Warden Sanchez failed to investigate Rivens-Baker's grievances or file proper reports, he does not allege facts showing a constitutional violation because prisoners have no constitutional right to the satisfactory investigation or resolution of administrative grievances or informal complaints. *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Without establishing that a constitutional right was violated, Rivens-Baker is not entitled to relief under § 1983. His claim that Warden Sanchez failed to investigate and remedy

his grievances about the excessive force incident does not state a claim upon which relief can be granted, and Warden Sanchez is entitled to summary judgment in his favor on this claim.

### b.   Failure to Train

To the extent that Rivens-Baker alleges that Warden Sanchez failed to properly train employees, Rivens-Baker fails to show that disputed issues of fact exist sufficient to overcome the motion for summary judgment.

"When, as here, plaintiffs allege that a supervisory official failed to train or supervise, they must prove that (1) the official failed to train or supervise the correctional officers; (2) a causal link exists between the failure to train or supervise and the alleged violation of the inmate's rights; and (3) the failure to train or supervise amounted to deliberate indifference." *Walker v. Upshaw*, 515 F. App'x 334, 339 (5th Cir. 2013).  To show deliberate indifference in this context, the plaintiff must "show that the failure to train reflects a deliberate or conscious choice to endanger constitutional rights." *Id.* at 340 (quoting *Estate of Davis ex rel. McCully v. City of Richmond Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).  To make this showing, "[t]he plaintiff must offer "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights." *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001).  Instead, the

29

plaintiff must "generally demonstrate at least a pattern of similar violations." *Id.*

Otherwise, there is no indication that the supervisor was on notice of the deficiency,

and "[w]ithout notice that a course of training is deficient in a particular respect,

decisionmakers can hardly be said to have deliberately chosen a training program

that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S.

51, 62 (2011).

In this case, the summary judgment evidence shows that one officer was found

to have violated two TDCJ policies during the incident with Rivens-Baker. (Dkt.

53-3, pp. 3, 11). Specifically, Sergeant Ojigho was found to have turned off the

video camera to replace the battery after Rivens-Baker was placed in the seclusion

cell but while the officers were still inside and to have failed to properly instruct

Rivens-Baker on decontamination procedures. (Dkt. 53-3, p. 11). But Rivens-Baker

offers no evidence that a failure to train Sergeant Ojigho in either of these procedures

was causally related to his claimed constitutional violations, nor does he offer any

evidence of a pattern of similar violations that would tend to put Warden Sanchez

on notice that the training of these prison employees was deficient. Absent such

evidence, Rivens-Baker has not raised a genuine issue of fact material to the question

of whether Warden Sanchez was deliberately indifferent to the need for additional

training.

Having failed to point to evidence sufficient to raise a disputed issue of material fact concerning his claims against Warden Sanchez, Rivens-Baker has not carried his burden when faced with the motion for summary judgment. His claims against Warden Sanchez are dismissed with prejudice.

## IV.   CONCLUSION

Based on the above, the Court **ORDERS** as follows:

1. The defendants' motion for summary judgment, (Docket Entry No. 53), is **GRANTED**.

2. Rivens-Baker's action is **DISMISSED with prejudice**.

3. Final judgment will be separately entered.

The Clerk will provide a copy of this Order to the parties.

SIGNED at Houston, Texas, on _____Sept 19_____, 2023.

DAVID HITTNER
UNITED STATES DISTRICT JUDGE